Okay, we'll now hear argument in the United States v. Myles. Ms. Popkin-Bradley, whenever you're ready. Good morning. Thank you, judges. My name is Cindy Popkin-Bradley, and I'm here for Antoine Myles. Mr. Myles is asking that this case be remanded back to the District Court and be re-sentenced for procedural unreasonableness. He received a life sentence, and we believe that that life sentence doesn't permit meaningful appellate review. I will say at the outset that I'm not abandoning the argues that I made in my blue brief on the procedural unreasonableness. That's what I'd like to focus on today. In this case, we have Judge Boyle, who actually pre-sentenced Mr. Myles right before the arraignment and outside of the jury. He didn't do it in front of the jury, but he did so nonetheless. He asked the government, Lawrence Cameron, how much time can I give him, in essence? And Lawrence Cameron stated, you can give him life. So was there anything wrong with asking that question? No, not in and of itself. It could be a warning. It could be letting the defendant know the seriousness of it. However, this seems to be a repeated pattern that Judge Boyle has over the course of his cases. Well, putting that aside, I think every district court judge wants to know what the parameters of the sentencing are going to be. So I don't, at least personally at this point, don't see anything wrong with that. Yes, Judge. And he went further to say, he asked how long he had been in custody to Rosemary Godwin, the defense lawyer, and she said three years. And he said, well, that's probably what's going to happen, so what do you all want to know between now and that? I mean, that in and of itself, I would argue, sounds that you're getting pre-sentenced. Defense counsel thought that. The client thought that. And I guess the initial question is whether I waived that issue by not actually arguing that in a delineated issue in the Blue Brief. And I would say that I didn't waive it because I did argue it as part of the argument in the Blue Brief regarding that part of the reasoning that he was pre-sentenced is you can tell that by the time they get to sentencing that Judge Boyle, excuse me, let me back up, Antwon Miles allocuted for about five pages, just gave his rendition of how he felt about the case. And then Judge Boyle, almost seemingly going to dismiss hearing from the government and just stated, well, he testified, he testified untruthfully, perjured himself, and then he gave him a life sentence. So it was pretty devoid of any reasoning at all. He didn't follow the law. Can we plainly tell, I mean, this is a, we're assessing this for plain error. Can we plainly, can we look at this record and plainly determine based on what seems to be a rather cryptic exchange that Judge Boyle had decided that he was going to give your client a life sentence? Yes. Why is that? Because there's nothing, he didn't go through the factors. He didn't. No, no. I'm backing up to the sort of the exchange between the court and the attorneys in this case. You mean at sentencing? Yeah. So he asks about the maximum sentence, life in prison. He asks about how much time, how old Mr. Miles was. He's told 42. And then he says, Judge Boyle, so he's looking at spending the rest of his natural life in federal prison. That's correct, Your Honor. And then as you pointed out, has he been in lockup now for four or five years? Three, I believe. Three years. Well, that's probably going to happen. Why isn't that as likely a reference to a possible three-year sentence and or a suggestion that if he's convicted of a, that he's likely to be convicted based on the evidence, and then he's looking at these ranges of sentences, but not a firm determination that he had fixed on a life sentence? I'm not sure I exactly understand what you're asking me, but... I guess what I'm asking is on this record, how can we tell definitively that Judge Boyle had decided, as you allege in advance, that he was going to sentence your life to life based on this sort of cryptic exchange? I mean, he's done it before and other... I don't know that we can look at what he's done before. We need to look at this record. I think when you get to the sentencing and see what he did at sentencing... Well, I think, not to put words in Judge Diaz's mouth, I think he's asking you to separate and look just at this initial conversation and that alone. And we'll get into the other stuff as we get through it. But if you're just looking at that one initial discussion, is that sufficient in and of itself to show the error that you claim? I hope so. You know, he inserts the word probably, I think. That's probably going to happen. And I don't think you can add the word probably and skirt around, you know, giving someone a life sentence ahead of time. In fact, it looks like to me that he used that word thinking that he could make that statement, if that makes sense. Because the other side of that would be that if he said, well, that's going to happen, so I'm going to give you a life sentence. He says that's probably going to happen. And what do you want to know between now and that? That, to me, is... So let's then fast forward to the actual pronouncement of the sentence after Mr. Miles has done his allocution. If instead of the rather sparse description the district court gave, if the district court went through a fulsome, line by line, 3553A discussion as to this is how I considered each factor, this is why he's getting a life sentence, I've considered his arguments and mitigation and all that sort of stuff. How would that change your argument as to these initial comments? I realize that's a hypothetical because it didn't happen here. It's still my position that he pre-sentenced him, but I do believe that if he gave all the factors and he went through and followed the law and did the sentencing, then it would look like it was procedurally reasonable. I mean, it was a guideline sentence, but that doesn't matter. You just can't come to court and give somebody a guideline sentence and you can appeal it if you want to or you can appeal your sentence. It doesn't work that way. Have I answered your question, Judge? I think so. He didn't go through any of the objections specifically and it almost, when you read the transcript, it was almost like he didn't even want to let the government talk. I mean, he was ready to get, he let him allocute and then it was like, let's just get that life sentence and let's get out of here. That's what it, from the record to me, it's very plain. So at the end of the day, tell us specifically what relief you would ask for Mr. Miles. Well Mr. Miles would like to start over. You know, based on the question that... Start over at what point? Start over with the sentence and remand it back in front of a different judge and let him start over with the indictments. A new trial, a new case. So you want a new trial or do you want a new sentencing, or both? Both, both. And how does the error in this case affect the conviction? Which was imposed, found by a jury, not by Judge Boyle. Well, I guess you'd have to go back and look at the remainder of the issues that my client had and that was that he wanted to represent himself. Okay, but putting those aside, assuming that we find no merit in those and we're focused solely on this sentencing claim. Right. Is it still your position that he's entitled to a new trial based on that alone? No. Okay. No judge. No. I know you said you want it sent back to a different judge, but this is sort of picking up on what Judge Agee was asking you. One of the things that makes it so hard to kind of assess the due process pre-sentence claim in this case is that we don't have an explanation from the district court judge as to why he imposed a life sentence. So wouldn't the right way to deal with that be to send it back to this district court and tell the district court, explain your sentence and then we could get our hands around the issues in the case? I mean, that's one way to do it. It is. I know in other cases that, it's an unpublished case, but I have had cases here that have been sent back to different judges when this sort of thing has happened previously. I think the government is going to argue that I weighed the issue when I didn't argue it. You weighed which issue? That procedural unreasonableness. And I just want to make sure that I tell you that I did raise that on page 33 in my blue brief. I argued that you could look and see at sentencing that he had already pre-sentenced him before the trial. And I think the government's giving you some documents, the last documents, to show that Judge Boyle had been through a number of trials at this point with the family. This was a whole family that was prosecuted. Father, sons, half-brothers, wives, for selling drugs. Anything else you want to tell us? You've got time left on rebuttal. No. I think that there's no reasoning and it just seems very obvious to me. And so I'm asking for all of it. But in the least, I think that it needs to go back to Judge Boyle for re-sentencing with some reasons for the life sentence. All right. Thank you very much. Mr. Rubin. Good morning. May it please the Court. Philip Rubin on behalf of the United States. This case has a lot of moving parts. And before I get into those parts at the outset, I just want to mention that most of the issues in this case were not preserved below. And I say that because, yes, it affects the standard of review, but it also affects the record that exists from below. And so in some cases in this, and the ones that I'll get to, the ones that my friend mentioned, the record is not ideal. But in part, that is because the record was not made below through objections by counsel. And that is why we have the plain error standard. It's not a penalty. It is a consequence of when the district court did not have the opportunity to make the record that it would have made below, then we look at it differently because of that lost opportunity by the district court. That's why things have to be plain. That's why a defendant has to show it affected his substantial rights. And I think that matters greatly in this case on both of the issues. So why don't you tell us, just to kind of cut to the core here perhaps, as I read the report, sentence the defendant to the guideline of life in custody. That's it. Why isn't that plain error? Your Honor, the first thing is I think I would also incorporate, and I know he was directly addressing the guideline objections, but that is one fluid statement from the court. So I would say that the court's sentencing explanation includes he testified, he was untruthful, he perjured himself, he tried to avoid facing the facts that were clearly established. And the government's position regarding the drug weight is well supported by the evidence in this case. Under all these circumstances, the guideline range is 43, category 4. I'll sentence the defendant to the guideline of life. I'm not going to stand up here and say that is a fulsome explanation in any sense. And I think under the case law, I think at a minimum it is error. The reason that I'm a little reluctant to say plainly is that on plain error review, this court has said, and this was the Lynn case, that it is the defendant making mitigating arguments that alerts the district court to its obligation to explain the sentence. And that was the language Lynn used about alerting the district court to the obligation. So you end up in sort of a strange circumstance when, as here, the defendant made absolutely no mitigating arguments. If you read the five page allocution, there is not one thing in there about the sentence. And what he did say, I would submit to you, was actually pretty damaging to him at the sentencing hearing. And so Lynn says you get plain error review for that. And then you would have to say that this is plainly deficient. And I don't know. I don't know because when I look at Rita, the Supreme Court affirmed on ordinary review, not plain error review, a sentence where the district judge said only that the guideline sentence was reasonable. And he didn't say that here. He didn't even actually say the words, the guideline sentence is reasonable. So it's less than Rita. But it's hard to say. I mean, I think that's a close question, and that's not the hill that I'm here to die on. It might be plain error. But what it is not is harm to his substantial rights. And that is the third prong of plain error review. And I will say, I have prevailed in this court after oral argument on sentencing transcripts with less than this. And it was not that it was an error. It was that under bulware, it was found to be harmless. Here, it's actually a higher burden on the defendant. And the reason it's a higher burden is because it's now his to demonstrate that the sentence would have been different if the court had explained more. And that is why, and it's the only reason why I supplied the court with the sentencing transcript in Mr. Webb's case, his brother, his co-defendant. Because in that case, you can actually see what would have happened if a very, I mean, I would submit to you practically identically situated co-defendant with the same guideline range, makes mitigating arguments, and you do have an explanation from this district judge the same day, an hour earlier, responding to it. And so I would submit that that tells us that the sentence would not be different on remand. And if the defendant cannot show that the sentence would be different on remand, he can't win under plain error review. If that still gives the court discomfort, you could certainly, you could remand it and ask for a more sufficient explanation. But I'm drawn to the case law in Lynn. And Lynn has applied plain error review in circumstances that were Lynn was a multi-defendant case, and one of the co-defendants' names was Peek. And Mr. Peek's counsel actually mentioned some mitigating, things that you might consider mitigating, his drug addiction and some other things. And this court said, well, you didn't tie those to an argument for a lower sentence. You get plain error review. Here, I don't even think there's any question that there was no mitigating argument. Well, in this case, we have a different circumstance. I think Judge Harris alluded to this earlier, because we have this earlier statement by the district judge that he's probably going to get a life sentence. And they raise a due process argument with regard to that. And the question is, how do you judge whether or not that is an error in of itself when we don't have any explanation at the actual sentencing as to why the sentence came about, which might have dissipated any concern about the earlier statement? So it's not just tied to the actual sentencing pronouncement, but you have this other consideration. I think that's a very fair consideration, Judge. And I want to stress that while I think these are two separate issues, it's why we think the procedural reason this argument was abandoned is that they are separate issues. I do think that, of course, you would consider when you're thinking about the bias claim, you would consider what happened at sentencing as just part of the, you would look at the whole record is what the case law says, and that is part of the whole record. So I think it's fair game. So I'd like to address that bias claim first, because while I think you can look at the sentencing and that the sentencing doesn't help the matter as far as the government's position on this, when I look at this transcript, what it says to me is not a judge. A judge who's been on the bench for 36 years did not decide on the sentence for a defendant before his arraignment. And I think you would need a lot more, especially considering that that bias claim is on plain error review, and you would need to be plain that he did so. So going back to the way the two things intersect here, why not send it back to the district court judge and say, look, we have this comment, and then we have a, it's a life sentence, a life sentence imposed with literally no explanation. What's the harm of getting the explanation so we can put the comment in context and make sure nothing went wrong here? I'm not going to suggest that there's some immense harm if you did that. I mean, the harm would be the work that goes into a resentencing hearing, which is not that much. It's not that much. But I think the other harm is that that would be inconsistent with other cases where this court has refused to do that when it does not think the sentence would be different on remand. Now, maybe you would, maybe you would say that this case has some unique factors to it. I would. And maybe, maybe that could be enough. And I would submit to you that the analysis should begin then. We should talk about the arraignment transcript. And the reason is, it's not just that I think that these, I don't think these two things together get you there. I don't think this transcript demonstrates pre-sentencing at all. And I certainly recognize where the argument is coming from, but this to me demonstrates more about the limits of transcripts than it does about some idea that he was actually pre-sentenced to life imprisonment before trial. What this transcript to me indicates is this is a judge who knows a kind of life sentence case when he sees it from the indictment, from the facts. And he wanted this defendant who was filing frivolous motion, frivolous letter, one after another to him, even while represented by counsel, to focus on the trial that was about to happen. It was not in way of sentencing him as a way of advising him that this is your maximum penalty and that that is really on the table for you. And... Well, he certainly could have done that, but then he went further and made this statement which we're trying to decipher. So what's your view of what he intended when he said that's probably going to happen? I think he was telling him that this wasn't just, because there are a lot of crimes where the statutory maximum is 20 years, but there's, anyone looking at that case with any experience would say, he's not going to get 20 years. And then there are cases where the statutory maximum is 20 years or life. And experienced practitioners looking at that case would say, yeah, this is one where he actually could get life. And I think the judge was, is certainly in the category of people who could look at that case and tell that. And he was advising him very seriously of what was at stake here. Do you understand what is really at risk? And that is where the word probably comes from. And I would submit, I don't think probably was inserted as some sort of end run around due process. I think that ascribes a lot more intent to what was said. I think probably indicates that you really are at risk here. I mean, this was a case that involved basically double the amount of crack cocaine you needed to get the highest possible base offense level under the guidelines. It was not hard to predict looking at this case as a whole that life imprisonment was absolutely a possibility and that it was something that he was, it wasn't just theoretically possible for him. It was absolutely probable in his case, at least his guidelines. And the judge was right. The guideline range was life. He got a life sentence, but he got a within guidelines life sentence. I don't say that to minimize it. I just say that it wasn't that the judge reached for that life sentence. It was what the conduct here called for by the sentencing commission. I would also just say that this is another reason it's important to think about the lack of an objection. Can I ask a question, though, about how this conversation took place? I'm looking at the excerpt of the transcript. There was a bench conference. Part of it was inaudible. Was the remainder of that conversation also at the bench? I don't think so. And I'm also reading into it a little bit. But the reason I don't think so is that the judge says to defense counsel, I let the jury, the jury's out, I let them out at your request. If the whole thing occurred at the bench, I don't believe that he would have, the jury would not have had to leave. That's the point of the bench conference in a lot of ways. So I think that the rest of it was an open court. I don't know for sure. So with respect to this plain error analysis, I think I hear you saying that you agree that the judge was firing a warning shot to this defendant that a life sentence was entirely possible. You don't, you think that's plainly what he meant on this record? Actually that brings me to sort of, I think, the better point, which is I don't think the record plainly demonstrates any of that. I'm not asking you to agree with the interpretation that I'm giving. I think that, I would submit that's the better one, especially the one that doesn't describe what would be actually astonishing conduct by a district judge to pre-sentence. And I just don't, I would need to see an awful lot more to think that a district judge ever did that. And so I'm not asking you to adopt any particular interpretation. All you would need to say is that it isn't plain that he pre-sentenced him. If it's not plain on this record, and that owes to, and this actually brings me right to the point that I wanted to make, you know, my colleague said defense counsel thought that he pre-sentenced him, the client thought that he pre-sentenced him. I don't know about, the record does not show that. Nothing in the record says defense counsel thought that a pre-sentencing occurred at this moment. And what likely would have happened either then or before the trial or after the trial would have been some kind of motion or objection. And you didn't see one. And what that tells me, and I have done plenty of hearings where you read the transcript after and it doesn't feel the same when you read it, that I don't think the people that were there that day thought he was pre-sentenced. I think they had a better ability to understand the context of what was going on because they were present in the courtroom and not reading it off of a dead transcript. And so in all of that, and again, it's plain error view because there was no objection, but there's also less of a record because there was no objection. If the defense attorney had said, Judge, I object, I think you just sentenced him to life imprisonment before trial, I think we would have an explanation in this transcript today of exactly what Judge Boyle meant. Well, but the other reason there's no record is because the district court didn't give any explanation when he sentenced him to life. Like, to me, that's what would have created a record that would allow us, I know I'm mixing up the issues and you wanted to start with the first one, but when you say the reason there's no record is because there was no objection to the comment, that is part of the reason there's no record. The other reason there's no record is because for whatever reason, the district court decided not to give an explanation when he sentenced him to life. That's the big gap in the record when I look at it. And I agree, and he should have said more. There's no question that he should have said more, but I'm very mindful of this court's language in Lynn. Lynn didn't just say, if you don't make an argument drawn from the 3553A factors for a lower sentence, you get plain error review. It actually said that that is what alerts the district court of its responsibility to explain it. And when that doesn't... I mean, that's certainly sufficient, but I think the district court, I mean, we have a lot of case law on this. District courts know you're supposed to explain your sentences. You're supposed to give an individualized assessment. And that's true whether or not someone has made particular mitigation arguments that you have to address. You have to make an individualized assessment. It is not enough to say, guidelines say life, spend the rest of your life in prison. You can't do that, and everybody knows that. And I do think that's a fair point. And all I can say is that the test that this court should apply, recognizing the unique circumstances of this case, I think the court should apply the analysis that it applies in every case. Otherwise, it's hard to justify why some defendants who have an equally deficient explanation get their sentence affirmed because it was the defendants who get it sent back. And so I think the only thing to do is to apply the analysis. And it's error, is it plain, did it affect his substantial rights, and does it harm the integrity of judicial proceedings? That's this court's test. It's every court's test. It's the Supreme Court's test. So error, we're not disputing. Plain error, you know, we've talked about that, and I'm not prepared to dispute that very hard. I do note the tension with Rita, but I think you can do... You're looking at it under our case law as plain error. Sure. You know, I think that under Blue's analysis, I think you're going to find that this is not acceptable. But under the substantial rights prong, I think it would only be appropriate to send it back for resentencing if you think that the defendant has met his burden of showing, and I will just... Even now, I'm standing at oral argument and the responsive argument, and the defense has never put forward a mitigating argument for me to respond to. Even right now, not in the district court, not during briefing, not during supplemental briefing, not even during the opening argument today. You don't think the integrity of the judicial proceedings includes a responsibility from this court to not let pass a statement by a district court judge that might have hinted at the possibility that he had been predisposed to give a life sentence? Shouldn't we do something about that? I guess the trouble for me is I just cannot read it that way. I just... Looking at this transcript...  No, I said that my reading, which is that he was alerting him to the risks, which I think was appropriate for him to do that, is the best reading. All I said was that you don't have to agree with me to say it wasn't plain that he did something else. Would you agree that it's a plausible reading to say from that language that somebody could conclude that the judge was presencing? It may not be the best reading, but isn't it a plausible reading? You know, I have no doubt that talented defense counsel and looking at it from that angle, but honestly, no. The reason I don't think it's plausible is that you have to look at everything else that happened. The cases on bias say you have to look at the entire record. And I agree, the sentencing hearing is part of that record. There's no question. There's no question about that. But the trial also is. And the defendant didn't even raise any objections to any conduct at the trial. Well, let me ask this. Do you think it's appropriate to look at the context outside of this record and what has happened in prior cases involving this judge? I think you can use it as relevant conduct. I will say I'm kind of out in the ocean here in the sense I don't have any case law whatsoever to say to you about this in either direction, Judge. Well, I'm just looking at Dunlap, for example. Sure. One unpublished decision that your colleague, I mean... That was actually the two of us on that case. So I'm prepared to talk about it, sure. So we sent that case back and sort of gave it, suggested that there were problems with the way this district court judge handled the matter, and yet here we are again. I think, sure, I think you can consider it in a certain respect, which is, I think that's historical information on how a judge conducts hearings. But I do think you have to consider that in all directions. And I'll get to that point about Dunlap. Dunlap was a little different. And if the court is going to rely on that, I would encourage the court to really consider the transcript in that case. Because that was a revocation hearing, and I'm working off a memory here, but that was a revocation hearing where the defendant was going to testify. And the court, before the defendant got up to testify in his defense, actually said, I'm going to impose 36 months. Okay, you can testify. And our response, even then, there was some ambiguity there. And I think you can see that the government is not, we're not trying to defend everything at every cost. Because in that case, our response, the court ordered a supplemental briefing, and our response was, look, we think there are multiple ways to read it, but you can certainly read it the way that you seem to be concerned about. And so if you think that, you should remand it. And the court remanded it. And our response in this case is different because this case is different. And, you know, I think that it would be Well, let me just give you another example. We cited in the supplemental request for briefing in Provence. That's another case involving the same district court judge and the issue of sufficiency and fulsomeness of the explanation, along with other issues that arose in that case. And consider that. I think, Your Honor, I think if you consider it, you have to consider its entire impact, which what I would submit to you is that demonstrates that this district judge does not give, in many cases, his explanations are not the most thorough that this court has seen. I think that's fair to say. And so none of those cases involved an accusation of pre-sentencing or bias. And yet you have the same kind of sentencing explanation problems. So I wouldn't presume that in this case There was another case, shoot, and now I'm not going to be able to remember the name, but where we had to send a case back to this district court because of comments made during the trial, this time in front of the jury. That was Lefse, Your Honor. It was an immigration fraud case. Lefse. Yeah, exactly. So, I mean, that case did sort of involve bias against the defendant. In that case, although it was very, very different than sort of the sufficiency Yeah, totally. But my broader point is, if you're going to say, well, this judge in the past has not explained sentences sufficiently, what I would say is that's evidence that this wasn't due to bias. That's evidence that this is more consistent with practice. It's something that has brought me to this podium a few times, I will say, but it is not evidence of bias. There was no accusation of bias or pre-sentencing or anything in any of those other cases. And yet you had the same kind of sentencing issues, Judge Giaz, that you mentioned. So why is it in this case that it would be presumed that it is actually the result of some insidious bias In Provence, I thought the issue was, you're right, not bias against the defendant, but a kind of the substantive reasonableness argument was very much about, oh, you know what, I'm not going to characterize it. But it was a case where the only challenge made was substantive reasonableness in this Oh, it was. Okay, I thought you were. That one was not my case, but the panel decided it had to reach procedural reasonableness in order to reach substantive reasonableness. And as to the sort of abandonment point, that's why we don't think that that is Oh, yeah, I'm sorry. I know your red light is on, but are you still arguing that this entire issue of the lack of an explanation was waived? If I might just address that very briefly. You know, the reason we think that is when you look at the briefing in this case, and we acknowledged it in our briefing, certainly there are two paragraphs that attack the explanation for the sentence. It is within the due process, which is an entirely different claim, and it is seeking vacator of the conviction of the trial, which is not a remedy that's available for a procedural reasonableness claim. And so I'm drawn to cases like Hill, where there was much more of a sort of direct argument made. It was where the defendant challenged procedural reasonableness, but really focused on the sentence and only sort of threw one sentence or two at the revocation sentence. And this court said, you waived that. So even within a procedural reasonableness argument, you can waive a piece of it by not arguing it enough. I think the rules matter. You know, we've talked about our position is that the sentence will be the same on remand. It would be the same if you sent it to a district judge on these facts, or a different judge. It would be the same. We don't think you should do that, but if you did, it would be the same. So I'm not worried about that. But I do worry about what happens if that kind of thing, if an issue can be tucked into another one in a brief. As the person who's writing the red briefs a lot, I think the rules are there to protect fairness to the parties, so that they have an opportunity to respond properly to arguments that were made. And so I would submit to you, no. I mean, this was not raised in the ordinary course that Rule 28 requires. And this court has found abandonment in circumstances that I would submit to you are easier, or rather, harder calls than this one. So I think then you would have to decide, and I know I'm way over my light, if at any point. You're getting pretty close. I'm getting pretty close. I'll just wrap up with, even though a life sentence is important, and I agree with everything Your Honor said about it being a life sentence, this case is not exceptional in the way that Sims and Manning were. And so I think you would create the risk of, why don't other defendants get that benefit? Why just us? Thank you very much, Mr. Rubin. Thank you. We ask that you affirm. All right. Ms. Falk and Bradley, you've got some time if you want to use it. Thank you. Just briefly, I would say that we do have to go by dead transcripts. That's what we do at this point in this court. And with respect to the fact that the defendant the government's argument that that issue is waived, I would just say I would rely on the Provence case and the Manning case. I'm quoting here in the Manning case, which is I guess quoting the Curry case, that rules of practice and procedure are devised to promote the ends of justice, not defeat them. And that the normal rule, of course, is that the man or constitute a waiver. But this rule is not absolute. And review may proceed. To the extent we do feel that either the issue was preserved or we should reach it anyway, the issue of the explanation, do you agree that we review the failure to provide an explanation under the plain error standard because it wasn't preserved in the district court? That plain error is the standard of reason? Is that what you're saying? Standard of review. Standard of review. I'm sorry. For the failure to offer an explanation. Yes. Okay. Yeah. And that's really all that I have. We still stand by the fact that Judge Boyle pre-sentenced him and we ask that you give him relief and at least send it back for a re-sentencing in front of Judge Boyle. Okay. Thank you very much. We'll come down to Greek Council and then we're going to take a very short reset.
judges: G. Steven Agee, Albert Diaz, Pamela A. Harris